931 F.2d 56
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CHESHIRE MANAGEMENT COMPANY, Plaintiff-Appellee,
v.
RESOLUTION TRUST CORPORATION, as Conservator for Germantown
trust Savings Bank, Defendant-Appellant.
 No. 90-5611.
 United States Court of Appeals, Sixth Circuit.
 April 23, 1991.
 
 Before NATHANIEL R. JONES and SUHRHEINRICH, Circuit Judges, and JOINER,* Senior District Judge.
 PER CURIAM.
 
 
 1
 Resolution Trust Corporation (RTC) appeals from a judgment entered after a bench trial of this contract dispute before Judge Julia Smith Gibbons. This court will not set aside Judge Gibbons' findings unless they are clearly erroneous, having due regard for the opportunity of the trial court to judge the credibility of the witnesses. In her memorandum, Judge Gibbons, on occasion, expresses serious questions as to the believability of certain witnesses. Fed.R.Civ.P. 52(a). The following statement of facts is taken from her findings, which are not clearly erroneous. RTC, as conservator of the Germantown Trust Savings Bank (Germantown), appeals from the adverse decision of the district court in this contract dispute. The dispute arises out of transactions entered into in February 1986, when Germantown was faced with the possibility of foreclosing upon a Houston apartment complex at a substantial loss. In an attempt to stave off the loss, Germantown entered into negotiations with the mortgagor's general partner, plaintiff Cheshire Management Company (Cheshire), resulting in an infusion of new capital into the apartment complex, and the mortgage being brought current for a time.
 
 
 2
 The present action is a suit upon a deal-sweetener entitled "option contract, put agreement and right of first refusal," which formed a part of the transaction. The principal purpose of the document was to give Cheshire an option to purchase 6,000 shares of Germantown common stock at $100 per share during an option period from May 31, 1986, through May 1, 1988, or in the alternative, the right to sell the option back to Germantown (the "put") on May 1, 1988, for $300,000 ($50 per share). As a result of reservations on the part of Cheshire's counsel as to the enforceability of this document standing alone, a provision was inserted belatedly that granted to Germantown the right of first refusal on end loans for single-family and condominium projects of Cheshire and its affilliates. The contract did not specify the means by which the right of first refusal was to be implemented. Cheshire properly exercised the put on May 1, 1988. Germantown refused to honor it, asserting that Cheshire had breached the contract by failing to fulfill its obligations under the right of first refusal provision.
 
 
 3
 Cheshire filed suit to enforce the contract in Tennessee Chancery Court on November 21, 1988. RTC subsequently assumed the conservatorship of Germantown and was substituted for Germantown in the litigation, and the action was removed to federal district court. A bench trial was held on December 18, 1989, and the court found the facts as to the conduct of the parties as follows.
 
 
 4
 After the execution of the contract at issue, the president of Cheshire, Nemeyer, began a practice of orally advising the president of Germantown, Wood, of Cheshire's projects and their locations. These conversations took place both by telephone and in person, when Nemeyer and Wood had occasion to meet on other matters. Nemeyer also corresponded with Wood on two occasions for the same purpose. Both of the letters referred to the possibility of Wood's making inspection tours of the projects mentioned. Wood made no objection to this method of being kept informed about end loan opportunities, and did not express any interest in financing Cheshire's projects in response to these overtures. Wood testified at trial that he had "other priorities." There was some evidence that as time passed, and Germantown continued to show no interest in further financing opportunities, Cheshire ceased to communicate every opportunity to Germantown.
 
 
 5
 The district court concluded on the basis of these facts that there had been an equitable waiver of the right "to insist on strict performance by Cheshire in affording Germantown Trust its right of first refusal." We agree, and adopt the district court's excellent discussion of the applicable Tennessee law.
 
 
 6
 Defendant argues for the application of a contra proferentem construction of the right of first refusal, which was drafted by Cheshire's counsel. However, Germantown could not help but have been aware that Nemeyer's communication of Cheshire projects was intended to extend the right of first refusal to Germantown, and Germantown acceded to this means of doing so. There is therefore no ambiguity in the means by which the right of first refusal was to be exercised, to which the contra proferentem rule need be applied.
 
 
 7
 The RTC also contends that silence cannot function as a waiver. Lusk v. Consolidated Aluminum Corp., 655 S.W.2d 917, 920 (Tenn.1983). The findings of fact of the district court, however, indicate that Wood did not intend to exercise the right of first refusal, and that his disinterest was clearly conveyed to Nemeyer. This finding is not clearly erroneous. The record indicates that Wood was not so much silent as indifferent during these discussions. While silence such as would give rise to uncertainty between the parties is clearly contrary to any conclusion that a waiver has occurred, Germantown's intent to waive was clearly conveyed by the conduct of Wood here.
 
 
 8
 Defendant asserts that its waiver was not an informed one, on grounds that there can have been no knowing relinquishment of the right to make end loans on projects of whose existence Germantown was unaware. This misconstrues the nature of the inquiry. Germantown's waiver of the right of first refusal was a knowing one, and that decision knowingly waived Germantown's right to be kept informed as to future projects. We also are not in agreement with defendant that Cheshire did not rely to its detriment upon Germantown's evident lack of interest in making end loans. It would work an inequity to allow Germantown to invoke the letter of the contract against Cheshire now, when Germantown's contemporaneous conduct made abundantly clear that Germantown had no serious interest in further loans to Cheshire.
 
 
 9
 RTC also challenges the district court's award of damages under an agreement pursuant to which Germantown promised to pay certain fees and expenses of Cheshire in exchange for Cheshire agreeing to a continuance on the day set for trial, and to RTC's substitution for Germantown. RTC attacks this agreement on grounds that it lacked consideration, arguing that Cheshire forewent nothing to which it was legally entitled. RTC's argument, however, is predicated on the assertion that Cheshire agreed not to oppose the removal. The district court found that Cheshire agreed to forego its right to object to the continuance and substitution, not the removal, therefore RTC's argument is not to the point.
 
 
 10
 AFFIRMED.
 
 
 
 *
 Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation